IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ROLAND D. CHRESTENSEN,<br><br>   Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>COMMISSIONER, SOCIAL SECURITY<br>ADMINISTRATION,<br><br>   Defendant. | Civ. No. 3:15-cv-00091-MC<br><br>OPINION AND ORDER |

MCSHANE, Judge:

  Plaintiff Roland D. Chrestensen brings this action for judicial review of the Commissioner's decision denying his application for disability insurance benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the ALJ erred in failing to conclude Chrestensen met the step three listing for intellectual disability, the ALJ's decision is REVERSED and this matter is REMANDED for a determination of benefits.

## STANDARD OF REVIEW

  The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record.

1 – OPINION AND ORDER

42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*.

At step three, the ALJ determined that Chrestensen had severe impairments of lumbar spine degenerative disc disease, illiteracy, and borderline intellectual functioning, but that those impairments did not meet or equal one of the listed impairments in 20 C.F.R. § 404, subpt. P, app. 1. TR 22-23. Specifically, the ALJ determined Chrestensen did not meet the criteria of listing 12.02. Listing 12.02 applies to organic mental disorders. Chrestensen admits he does not meet the requirements for listing 12.02. Instead, Chrestensen argues he meets listing 12.05, which the ALJ did not specifically address.

Listing 12.05 sets the standard for establishing an intellectual disability. It states, "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports the onset of the impairment before age 22." 20 CFR 404 Subpart P, Appendix 1. In addition to establishing those first two prongs, a claimant must establish one of four requirements establishing the severity level of the intellectual disability. *See* 12.05A-D. At issue here is 12.05C, which requires "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

The Commissioner does not dispute that Chrestensen meets the two subpart C requirements. In June 2006, Gregory A. Cole, Ph.D. performed an intellectual assessment of Chrestensen. TR 341-46. Dr. Cole conducted WAIS-III verbal, performance, and full-scale IQ tests. Chrestensen scored a 70 on the verbal IQ test. TR 344. The ALJ found Dr. Cole's assessment to be credible. TR 25. The Commissioner agrees that the verbal IQ score of 70 qualifies for C prong listing 12.05. The ALJ's step-two determination that Chrestensen's lumbar spine degenerative disc disease is a "severe" impairment qualifies under prong C's "physical or other mental impairment imposing an additional and significant work-related limitation of function." *McGrew v. Colvin*, 2015 WL 1393291 at *5 (D. Or., March 25, 2015) ("ALJ's step two finding of severe impairment satisfies work-related limitation requirement of listing 12.05C.) (citations omitted).

Rather than disputing whether Chrestensen meets prong C of listing 12.05, the Commissioner argues that Chrestensen cannot meet or equal the requirement from the introductory section of listing 12.05. As noted, that section states "Intellectual disability refers to

3 – OPINION AND ORDER

significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports the onset of the impairment before age 22." The Commissioner argues that Chrestensen cannot meet the introductory requirement because Chrestensen worked past the age of 22 for over a decade, including work that required him to supervise 10 employees. The Commissioner also argues Chrestensen's activities of daily living suggest he does not meet the listing. The Commissioner's argument is misplaced.

Several cases in the District of Oregon discuss the requirements of Listing 12.05. *See McGrew*, 2015 WL 1393291; *Pedro v. Astrue*, 849 F.Supp.2d 1006 (D. Or. 2001); *Brooks v. Astrue*, 2012 WL 4739533 (D. Or. 2012). All three cases are on point. In *McGrew*, Judge Simon provided a thorough discussion of the different prongs and requirements of Listing 12.05. 2012 WL 1393291 at *4-8. Judge Simon noted the diagnostic description for intellectual disability contained in the introductory paragraph of listing 12.05 is a substantive requirement for meeting the listing. *Id.* at *5. Prongs A-D of listing 12.05, however, establish the severity for meeting listing 12.05. *Id.* Judge Simon's analysis is persuasive. Because Chrestensen meets the severity of listing 12.05 through prong C, the only remaining issue is whether Chrestensen also meets the substantive requirement contained in the introductory paragraph. In other words, does Chrestensen have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period?" Listing 12.05. If so, did those deficits begin before Chrestensen turned 22?

Similar to *McGrew* and *Brooks*, there is evidence Chrestensen took special education classes in high school. As in *McGrew* and *Brooks*, Chrestensen received mostly Ds and Fs. Chrestensen, like *McGrew*, dropped out in the 10th grade (in Chrestensen's case, 10 days into the

10th grade) and never received a GED. As in *McGrew* and *Brooks*, the Commissioner here argues that Chrestensen's work history and activities of daily living after the age of 22 point to the conclusion that he does not meet or equal listing 12.05. As noted by Judge Simon, however, "Having some work history and possessing average living skills and the ability to drive does not indicate that a claimant does not have deficits in adaptive functioning." *McGrew*, 2015 WL 1393291 at *7 (listing cases demonstrating same). Adaptive functioning is described as:

> How effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, socioeconomic background, and community setting. . . . Problems in adaption are more likely to improve with remedial efforts than is the cognitive IQ, which tends to remain a more stable attribute.

*Pedro*, 849 F.Supp.2d at 1011 n.1 (quoting *Am. Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders* 42 (4th ed. 2000, text revision).

Dr. Cole noted Chrestensen's verbal and performance skills are "at a borderline level of intellectual ability in relation to his peers." TR 345. Chrestensen tested below average in verbal comprehension, working memory, perceptual organizational skills, and processing speed. *Id.* Chrestensen had problems with attention and concentration. *Id.* Chrestensen "exhibited below average immediate and delayed memory capabilities." TR 345. As noted, the ALJ found Dr. Cole's assessment to be credible. TR 25. Further, the ALJ found Chrestensen remains illiterate to this day.

The evidence shows Chrestensen's deficits started well before age 22. "Evidence that demonstrates deficits in adaptive functioning before age 22 may be circumstantial. Relevant circumstantial evidence includes difficulties with reading and writing, attendance of special education classes, and dropping out of school." *McGrew*, 2015 WL 1393291 at *6 (listing cases). Here, it is undisputed that Chrestensen presented all of that "relevant circumstantial evidence," and that those deficits were present before he turned 22. Additionally, as there is no evidence of

5 – OPINION AND ORDER

any worsening of Chrestensen's cognitive impairments after the age of 22—the car crash allegedly preventing Chrestensen from working injured his back, not his brain—Chrestensen's valid adult IQ score is "reflective of an impairment that manifested during [his] developmental period." *Brooks*, 2012 WL 4739533 at *6.

I conclude Chrestensen has demonstrated "significantly subaverage general intellectual functioning with deficits in adaptive functioning." Listing 12.05. As found by the ALJ, Chrestensen suffers from the severe impairments of illiteracy and borderline intellectual functioning. TR 22. As described above, Chrestensen demonstrated that those limitations initially manifested before the age of 22. Chrestensen's valid verbal IQ score of 70, combined with his severe impairment of lumbar spine degenerative disc disease meet the severity requirement of listing 12.05C. I conclude Chrestensen meets listing 12.05 of intellectual disability. The ALJ erred in finding Chrestensen did not meet listing 12.05 at step three. Meeting a listed impairment ends the five-step inquiry. *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). Therefore, Chrestensen is "presumed unable to work and is awarded benefits without a determination of whether he actually can perform his own prior work or other work." *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).[1]

Because the record is complete and demonstrates Chrestensen meets listing 12.05, this matter is remanded for calculation of benefits. *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

/ / / /

/ / / /

/ / / /

---

[1] Because the analysis does not proceed to steps four and five, the Commissioner's argument that most of the medical opinions agreed Chrestensen could work despite his impairments is irrelevant. Chrestensen is presumed disabled at step three, before the ALJ even assigns Chrestensen a RFC.

6 – OPINION AND ORDER

## CONCLUSION

The Commissioner's decision is REVERSED. This matter is REMANDED for a calculation of benefits.

IT IS SO ORDERED.

DATED this 21st day of December, 2015.

       /s/ Michael J. McShane      
Michael McShane
United States District Judge

7 – OPINION AND ORDER